UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHNNY GREENE and MONICA GREENE,
    Plaintiffs,

vs.     No. 1:13-cv-00937-JAP/KBM

BANK OF AMERICA, N.A., f/k/a/ BAC
HOME LOANS SERVICING,
    Defendant.

## MEMORANDUM OPINION AND ORDER

In DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(B)(5) AND (6) (Doc. No. 14) (Motion to Dismiss), Defendant Bank of America, N.A. (BANA) asks the Court to dismiss the complaint in its entirety for failing to state a claim upon which relief can be granted. Plaintiffs Johnny and Monica Greene oppose the motion. *See* PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED.R.DIV.P. 12(B)(5) AND (6) (Doc. No. 16) (Response). As discussed in detail below, the Court will grant in part and deny in part BANA's Motion to Dismiss.

## PROCEDURAL BACKGROUND

On May 30, 2013, Plaintiffs filed a complaint in the Eleventh Judicial District Court of New Mexico asserting violations of the Real Estate Settlement Procedures Act (RESPA), the Truth in Lending Act (TILA), the New Mexico Unfair Practices Act (UPA), as well as causes of action for misrepresentation and breach of contract. *See* Complaint for Violation of Real Estate Settlement Procedures Act (RESPA), Truth in Lending Act (TILA), The Unfair Practices Act (UPA), Misrepresentation, and Breach of Contract, Exhibit 2 to DEFENDANT'S NOTICE OF REMOVAL (Doc. No. 1-2) (Complaint). The Complaint refers to a mortgage on Plaintiffs' primary residence and alleges that BANA, the mortgage servicer, violated the terms of the

1

mortgage. In addition, the Complaint refers to a letter that Plaintiffs mailed to BANA in October of 2011. Plaintiffs allege that BANA did not respond to their October 2011 letter in violation of RESPA. Plaintiffs did not attach a copy of the mortgage or the October 2011 letter to the Complaint.

BANA attached a copy of the mortgage to the Motion to Dismiss and asked the Court to take judicial notice of the mortgage as a publically-recorded document. Motion at 2. Plaintiffs attached three letters to the Response: a copy of the October 2011 letter, a copy of a letter BANA mailed to Plaintiffs in November 2011, and a copy of a letter BANA mailed to Plaintiffs in January 2012. In general, a court must treat a motion to dismiss as a motion for summary judgment if the parties present matters outside the pleadings and the Court considers these matters. FED. R. CIV. P. 12(d). However, there is an exception for documents central to the complaint. "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999).

Because the mortgage and the October 2011 letter are central to Plaintiffs' claims, and neither party disputes the authenticity of either document, the Court may consider them without transforming BANA's Motion to Dismiss into a motion for summary judgment. However, the Court will not consider the two letters BANA sent Plaintiffs, because they do not appear to be central to the Complaint.

**DISCUSSION**

**I. STANDARD OF REVIEW**

The Supreme Court has articulated a two-step approach for district courts to use when considering a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, a court should identify the adequately pleaded factual allegations contained in the complaint, disregarding unsupported legal conclusions in the process. *Id.* at 678. While a complaint need not include detailed factual allegations, it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Next, having identified the adequately pleaded claims, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678.

A claim is facially plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility lies somewhere between possibility and probability; a complaint's "allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

**II. ADEQUATELY PLEADED FACTUAL ALLEGATIONS**

For the purposes of ruling on the Motion to Dismiss, the Court assumes the following allegations from Plaintiffs' Complaint to be true. Plaintiffs, Johnny and Monica Greene, own a home in McKinley County, New Mexico. Complaint ¶¶ 1, 7-8. In the year 2000, at the time of purchase, Plaintiffs obtained a mortgage on their home. *Id.* ¶ 7. Defendant Bank of America,

N.A. (BANA) is the mortgage servicer.[1] *Id.* ¶ 5. On October 4, 2011, the Greenes' previous attorney sent BANA a letter identified as a "qualified written requested" (QWR) under the Real Estate Settlement Procedures Act (RESPA) requesting information about the Greenes' mortgage. *Id.* ¶¶ 9, 11, 14. BANA received the letter on October 7, 2011. *Id.* ¶ 16. However, the Greenes did not receive a substantive response from BANA. *Id.* ¶ 29. As a result, the Greenes suffered emotional distress, sought legal advice, and eventually paid an attorney to bring a lawsuit against BANA. *Id.* ¶¶ 21, 31. In addition, BANA's failure to respond caused the Greenes to believe that BANA was hiding information. *Id.* ¶¶ 21, 36. Because of this belief, the Greenes continued to monitor their credit reports at their own expense. *Id.* ¶ 36. During the 60 day period after BANA received the Greenes' letter, BANA reported negative and damaging information to one or more consumer reporting agency. *Id.* ¶¶ 36-37.

Plaintiffs' remaining factual allegations are meager. Plaintiffs' adequately allege that they made "payments pursuant to the Bank's offer of a somewhat reduced monthly payment." *Id.* ¶ 44. However, Plaintiffs do not specify when BANA offered to accept reduced monthly payments or during what period Plaintiffs made such payments. Nonetheless, the Court accepts as true all Plaintiffs' adequately pleaded factual allegations, including Plaintiffs' allegation that BANA did not apply Plaintiffs' reduced payments to the principal or interest on the mortgage. *Id.* ¶ 55. BANA representatives told Plaintiffs that their payments were being "held aside and not applied to the outstanding balance." *Id.* ¶ 58.

Likewise, the Court accepts that BANA told the Greenes BANA would bring their account current if the Greenes paid certain agreed upon monthly payments via Western Union, *id.* ¶ 64, even though Plaintiffs do not indicate when BANA made this promise. In fact, it is not

---

[1] While it is not relevant to the lawsuit, BANA notes that it ceased being Plaintiffs' mortgage servicer on September 14, 2013. Motion to Dismiss at 2.

clear whether BANA's alleged promise to bring the Greenes account current is the offer to accept reduced monthly payments referenced earlier in the Complaint. In either case, the Court will recognize that Plaintiffs' relied on BANA's promise and paid the agreed upon amount each month. *Id.* ¶ 66. These are the adequately pleaded factual allegations upon which Plaintiffs base their claims.[2]

## III. LEGAL SUFFICIENTY OF THE COMPLAINT

### A. Count I: RESPA (Failure to Respond to a QWR)

Plaintiffs allege that BANA violated RESPA by failing to respond to a qualified written request (QWR), which was mailed to BANA in October 2011. Plaintiffs seek to recover statutory and actual damages.

#### 1. Existence of a Valid QWR

RESPA requires loan servicers to respond to QWRs, which are written requests for information that identify the name and account number of the borrower and that include "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error *or* provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(2) (emphasis added). BANA argues that letter the Greenes mailed on October 4, 2011 does not constitute a QWR because it does not contain a statement of the reason the Greenes believed their account was in error. DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(B)(6) (Doc. No. 17) 2. The Court concludes that the October 2011 letter is a valid QWR.

---

[2] Plaintiffs' Response clarifies that BANA offered Plaintiffs a trial payment plan under the Home Affordable Modification Program (HAMP) in April 2009. According to Plaintiffs, after they began making timely payments under the trial payment plan, BANA told them that BANA would be extending a permanent loan modification offer. BANA told Plaintiffs to "pay what they could" while the offer was processed, but BANA never finalized the permanent loan modification. Because these allegations are absent from the Complaint, the Court cannot consider them for the purpose of ruling on the Motion to Dismiss.

A plaintiff's correspondence with a loan servicer does not need to include "magic language" in order to trigger RESPA's requirements. *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 686-687 (7th Cir. 2011). Any letter that adequately identifies the borrower and "provides sufficient detail to the servicer regarding . . . information sought" constitutes a QWR. *See* 12 U.S.C. § 2605(e)(2).

The October 4, 2011 letter identified the Greenes by name, provided their account number and address, and stated that information was being requested in connection with a "dispute of the amount alleged to be due and owing contained in recent statement from Bank of America." October 4, 2011 Letter, Exhibit A to Response (Doc. No. 16-1). The letter then listed, in detail, the information being sought. *Id.* Under the plain language of RESPA, the letter qualifies as a QWR. Plaintiffs' Complaint contains sufficient factual information for the Court to reasonably infer that BANA violated RESPA by failing to respond to a valid QWR.

**2. Damages Recoverable under RESPA**

A defendant who fails to comply with RESPA is liable to the borrower for (1) "any actual damages" caused by the RESPA violation and (2) statutory damages in cases where there was a pattern or practice of noncompliance. 12 U.S.C. § 2605(f).

Plaintiffs seek statutory damages and allege that BANA's failure to respond "represents a pattern or practice of noncompliance." Complaint ¶ 32. However, Plaintiffs have not adequately stated a claim for statutory damages. Whether BANA engaged in a pattern or practice of noncompliance is a legal conclusion and Plaintiffs do not plead any facts to support such a conclusion. Plaintiffs identify one instance in which BANA allegedly failed to respond to a QWR; the Court cannot infer a pattern or practice of noncompliance from the one isolated violation. *See Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013) (agreeing

with a district court decision to dismiss a RESPA claim where the plaintiff merely asserted a pattern or practice of noncompliance without alleging violations with respect to other borrowers); *Childress v. CitiMortgage, Inc.*, No. 08-1137, 2010 U.S. Dist. LEXIS 145683 at *30 (D.N.M. Feb. 19, 2010) ("It has become well established that the failure to answer one or two qualified written responses does not constitute a pattern or practice.").

However, Plaintiffs' RESPA claim is not deficient merely because Plaintiffs failed to state a claim for statutory damages. Plaintiffs have alleged the following actual damages: emotional distress, the costs of bringing the legal action, the costs of seeking legal advice,[3] and the costs of monitoring their credit reports.[4] BANA contends that the costs of bringing the legal action, the costs of seeking legal advice, and the costs of monitoring the credit reports were not caused by the RESPA violation. In addition, BANA argues that RESPA "only allows for recovery for economic pecuniary injury." Motion at 6.

While courts are split on the issue of whether RESPA permits the recovery of non-pecuniary damages, *compare Katz v. Dime Sav. Bank, F.S.B.*, 992 F. Supp. 250, 256 (W.D.N.Y. 1997) (RESPA is not a consumer protection statute; it only provides a remedy for pecuniary harm), and *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) ("Under RESPA, a borrower may not recover actual damages for nonpecuniary losses."), *with Moore v. Mortgage Elec. Registration Sys.*, 848 F. Supp. 2d 107 (D.N.H. 2012) (the plain language of RESPA allows a plaintiff to recover "any actual damages" including damages for emotional distress), and *Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d 863, 870 (N.D. Ill. 2002) ("RESPA is a consumer protection statute and RESPA's actual damages provision

---

[3] Plaintiffs allege that the Greenes "felt it necessary to seek legal advice" as a result of BANA's failure to respond to the qualified written request. Complaint ¶ 21.
[4] The Complaint states: "Due to the Bank's actions in failing to adequately respond to their QWR and the Greenes belief that the Bank appeared to be hiding information, the Greenes continued to monitor and review their credit reports at their own expense . . ." Complaint ¶ 36.

7

includes recovery for emotional distress."), the better reasoned line of cases holds that actual damages include damages for emotional distress. Cases to the contrary either limit RESPA damages based on the claim that RESPA is not a consumer protection statute, *see, e.g., Katz*, 992 F. Supp. at 256, or they provide no explanation for the narrow interpretation adopted by the court, *see, e.g., Lal*, 680 F. Supp. 2d at 1223. Neither approach is convincing. By its own terms RESPA is a consumer protection statute. *See* 12 U.S.C. § 2605(k) (referring to the "the consumer protection purposes of this Act"). As a district court in the Seventh Circuit explained, "many courts have held consumer protection statutes are to be interpreted broadly in order to give effect to their remedial purposes." *Ploog*, 209 F. Supp. 2d at 870.

Although the Tenth Circuit has not ruled on whether non-pecuniary damages are available under RESPA, two relatively recent courts of appeals' decisions indicate that RESPA allows a plaintiff to recover damages for emotional distress. *See Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 696 (7th Cir. 2011) (noting, without comment, the defendant's concession that emotional distress damages are available as actual damages under RESPA); *McLean v. GMAC Mortg. Corp.*, 398 Fed. Appx. 467, 471 (11th Cir. 2010) (construing the term "actual damages" broadly to allow the plaintiff to recover non-pecuniary damages). Moreover, the plain language of the statue allows Plaintiffs to recover "any actual damages." In accordance with this language, the Court will allow Plaintiffs to recover damages for demonstrable emotional distress.

Because the Court concludes that RESPA permits Plaintiffs to recover damages for emotional distress, at this point, the Court will not consider whether there are sufficient facts to show that BANA's allegedly illegal conduct actually caused the pecuniary harm Plaintiffs identify. Plaintiffs clearly allege that BANA's failure to respond to the QWR caused them "stress and anxiety." Complaint ¶ 31. Therefore, Plaintiffs have stated a claim under RESPA.

B.  **Count II: RESPA (Adverse Credit Reporting)**

RESPA prohibits loan servicers from making negative credit reports in the 60-day period following the receipt of a QWR. 12 U.S.C. § 2605(e)(3). Plaintiffs sufficiently allege that BANA violated this prohibition; according to the Complaint, Plaintiffs monitored their credit reports and BANA made a negative credit report to at least one consumer agency in the 60-day period following the receipt of the October 2011 QWR. Complaint ¶ 37-38.

However, Plaintiffs have not stated a claim for relief; Plaintiffs do not elaborate on the nature of the damages caused by BANA's alleged adverse credit reporting.[5] Courts consistently hold that the mere existence of negative credit reporting does not give rise to damages under RESPA. To recover, a plaintiff must allege that she was independently harmed by the adverse credits reports; for instance, an allegation that the negative credit reports were communicated and used by a third-party to the plaintiff's detriment would suffice. *See, e.g.*, *Johnstone v. Bank of Am., N.A.*, 173 F. Supp. 2d 809, 816-817 (N.D. Ill. 2001). Because Plaintiffs have not specified how they were harmed by BANA's conduct, they have failed to satisfy a necessary element of a RESPA claim. The Court will dismiss Count II without prejudice. If Plaintiffs are in possession of factual information indicating that they were independently harmed by BANA's allegedly illegal adverse credit reporting, Plaintiffs may amend the Complaint and revive their second RESPA claim.[6]

---

[5] While Plaintiffs seek to recover the cost of monitoring their credit reports, the Complaint clearly indicates that Plaintiffs' decision to monitor their credit reports was caused by BANA's failure to respond to the QWR. It was not caused by the alleged adverse credit reporting.

[6] The Court reminds Plaintiffs' counsel of the obligation to comply with Federal Rule of Civil Procedure 11(b), which prohibits counsel from knowingly making allegations that lack evidentiary support. If Plaintiffs choose to amend the Complaint, the amendment must be made consistently with Rule 11(b).

### C. Count III: TILA

According to the Complaint, BANA refrained from crediting Plaintiffs' payments to their account in violation of TILA. Plaintiffs do not specify when this occurred. Oddly enough, Plaintiffs appear to have conceded that BANA's allegedly illegal conduct occurred outside TILA's one-year statute of limitations. In the Response, Plaintiffs argue that the TILA claim is not time-barred, because the federal common law doctrine of equitable tolling permits Plaintiffs to bring a claim for conduct outside the one-year statute of limitations. Response at 15.

"[F]raudulent concealment, inducement, or trickery by a defendant can toll the statute of limitations of a federal cause of action. . . " *Cooper v. NCS Pearson, Inc.*, 733 F.3d 1013, 1016 (10th Cir. 2013). However, equitable tolling is only available if Plaintiffs diligently pursued their claims, but were prevented from timely filing by "extraordinary circumstances" beyond Plaintiffs' control. *See Heil v. Wells Fargo Bank, N.A.*, 298 Fed. App'x. 703, 706-707 (10th Cir. 2008) (declining to equitably toll the one-year TILA statute of limitations when the plaintiffs knew about the bank's failure to credit payments more than one year before filing the complaint). Plaintiffs carry the burden of showing that the statute of limitations should be tolled. *Id.* at 707.

Plaintiffs have not satisfied this burden; there is no information in the Complaint which would sustain a decision in favor of equitable tolling. In particular, Plaintiffs do not state when they first learned of BANA's alleged failure to apply payments. Presumably, this information is in Plaintiffs' possession. According to the Complaint, at some unidentified point in time, BANA representatives told Plaintiffs that their payments were being "held aside." If Plaintiffs wish to proceed with the TILA claim, they must amend the Complaint, consistent with Rule 11(b), to include information supporting their request for equitable tolling. Plaintiffs should identify when they learned about BANA's alleged failure to post payments and should explain why Plaintiffs

did not discover this failure earlier and why Plaintiffs did not file suit within the statute of limitations period. The Court will dismiss Plaintiffs' TILA claim without prejudice, with an opportunity to file an amended TILA claim.

### D. Count IV: UPA

Plaintiffs allege that BANA did not apply their payments to the principal and outstanding interest, but diverted the payments into a suspense account and misrepresented the amount owed on Plaintiffs' mortgage to Plaintiffs and to various credit agencies, thereby violating the UPA.[7] BANA contends that Plaintiffs have not "plead any of the elements necessary to state a claim under the UPA." Motion to Dismiss at 12 (emphasis in original).

#### 1. Elements of the UPA

Under the UPA, a defendant may be held liable for knowingly making "a false or misleading oral or written statement, visual description or other representation of any kind . . . in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts . . . in the regular course of the [defendant's] trade or commerce, that may, tends to or does deceive or mislead any person." N.M. Stat. Ann. §§ 57-12-2, 57-12-3. A UPA claim contains three elements: (1) a false or misleading representation, (2) knowingly made in the defendant's regular course of business in connection with certain activities, including the collection of debts (3) of the type that would tend to deceive. *Lohman v. Daimler-Chrysler Corp.*, 142 N.M. 437, 439 (N.M. Ct. App. 2007); *see also Ashlock v. Sunwest Bank of Roswell, N.A.*, 107 N.M. 100, 101 (1988) (overruled on other grounds).

---

[7] In the Response, Plaintiffs contend BANA violated the UPA by failing to comply with the trial payment plan. Response at 17. As previously discussed, the Complaint includes no allegations concerning loan modification or the trial payment plan. If Plaintiffs seek damages based on violations of the trial payment plan, they must amend the Complaint.

These are the only elements Plaintiffs are required to allege. Plaintiffs have satisfied each element by alleging that (1) BANA made false credit reports, (2) when it made these reports it was acting as Plaintiffs' loan servicer and was attempting to collect payment on Plaintiffs' mortgage, and (3) these reports were made to credit agencies. From these facts, the Court may reasonably infer that the false credit reports are of the type that would tend to mislead.

BANA incorrectly claims that Plaintiffs cannot recover under the UPA unless they relied on the negative credit reports. "The UPA does not require that the defendant's conduct actually deceive a consumer; it permits recovery even if the conduct only tends to deceive. Accordingly, a claimant need not prove reliance upon a defendant's deceptive conduct . . ." *Lohman*, 142 N.M. at 444. Likewise, there is no requirement under the UPA that the illegal misrepresentation be made to the plaintiff. *Id.* at 442 ("[T]he UPA is capable of encompassing a broad array of commercial relationships, and nothing expressly limits its scope to communications directed at the plaintiff. . ."); *see also Billsie v. Brooksbank*, 525 F. Supp. 2d 1290, 1295 (D.N.M. 2007) (permitting a UPA claim to proceed where the plaintiff presented evidence that an attorney made a misrepresentation to a court in order to garnish the plaintiff's wages). Finally, BANA erroneously asserts that Plaintiffs must have actual damages to proceed with a UPA claim. Even in the absence of actual loss, a plaintiff may recover statutory damages of $100 for a UPA violation. *Lohman*, 142 N.M. at 445.

  **2. Heightened Pleading under Federal Rule of Civil Procedure 9(b)**

According to BANA, the Rule 9(b) heightened pleading standard for allegations of fraud requires Plaintiffs to plead the UPA claim with greater specificity. BANA raises this argument

for the first time in its reply.[8] Because "arguments not raised in the opening brief are waived," *City of Colo. Springs v. Solis*, 589 F.3d 1121, 1135 (10th Cir. 2009), the Court will not apply Rule 9(b) to Plaintiffs' UPA claim. However, because the Court is permitting Plaintiffs to amend the Complaint, the Court encourages Plaintiffs to augment their factual allegations in the spirit of Rule 9(b) by providing the names of the credit agencies who received inaccurate credit reports and outlining the general time frame during which inaccurate credit reporting allegedly occurred.

### E. Count V: Misrepresentation

The adequately pleaded factual allegations pertaining to Plaintiffs' misrepresentation claim are sparse. Plaintiffs merely allege that BANA's "misrepresentation to the Greenes of bringing their account current with agreed upon monthly payments via Western Union was intentional and reckless."[9] Complaint ¶ 64. Because Plaintiffs bring a claim for intentional and reckless misrepresentation, they must comply with Rule 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield*, 472 F.3d 702, 726-727 (10th Cir. 2006). In other words, in an amended complaint, Plaintiffs must (1) identify who made each alleged misrepresentation, providing names if possible, (2) pinpoint when each alleged misrepresentation

---

[8] In the reply, BANA states that it "specifically argued that Plaintiffs' claims for violation of New Mexico's Unfair Practices Act . . . failed because Plaintiffs failed to meet the heightened pleading standards of Fed.R.Civ.P. 9." This is not the case. BANA initially argued that Rule 9(b) governed Plaintiffs' misrepresentation claim; in the Motion to Dismiss, BANA never asked the Court to apply Rule 9(b) to the UPA. Furthermore, BANA's reply does not devote any time to explaining why Rule 9(b) should apply to the UPA. Accordingly, BANA has waived its Rule 9(b) objection to the UPA claim. *See Therrien v. Target Corp.*, 617 F.3d 1242, 1252-53 (10th Cir. 2010) (appellant waived argument when it mentioned the issue only once in a footnote in its opening brief and footnote did not contain argument); *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1169 (10th Cir. 2002) (one-sentence argument waived because not adequately briefed); *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived."). The Court notes that Rule 9(b) does not obviously apply to the UPA. Rule 9(b) only applies to fraud allegations; unlike a common law fraud claim, the validity of a UPA claim does not depend on there being actual and detrimental reliance. *See supra* (discussing elements of a UPA claim).

[9] While Plaintiffs' Response includes greater detail, the Response cannot supplement the Complaint.

occurred, (3) explain how each alleged misrepresentation was communicated to Plaintiffs, and (4) paraphrase the contents of each alleged misrepresentation. In addition, Plaintiffs must provide specific factual information explaining how their reliance on each alleged misrepresentation caused them harm. Because this information is currently missing from the Complaint, the Court will dismiss Plaintiffs' misrepresentation claim without prejudice.

## F. Count VI and Count VII: Breach of Contract

Plaintiffs allege that BANA breached the terms of the Note and the Mortgage by (1) failing to properly post Plaintiffs' payments to the principal or the interest and, (2) failing to notify Plaintiffs of any interest rate changes.[10] Once again, BANA argues that Plaintiffs "do not assert <u>any</u> of the elements necessary to state a claim." Motion to Dismiss at 15.

### 1. Elements of a Breach of Contract Claim

According to BANA, Plaintiffs' two breach of contract claims fail because Plaintiffs do not adequately allege: (1) the existence of a contract, (2) Plaintiffs' compliance with the contract, (3) "a general averment of the performance of any condition precedent," and (4) damages caused by the breach of contract. BANA copies these elements from *McCasland v. Prather*, 92 N.M. 192, 194 (N.M. Ct. App. 1978), a case which contains an antiquated statement of New Mexico law. In more recent cases, the New Mexico courts list the four elements of a breach of contract claim as: (1) the existence of a contract, (2) the breach of the contract, (3) causation, and (4)

---

[10] In the Response, Plaintiffs claim that their Complaint "alleges that the contract in question is the [trial payment plan] offered to the Plaintiffs by Defendant to which [sic] Defendant breached by failing permanently [sic] modify the loan and failing to properly post the Plaintiff's payments to either the principle [sic] or interest pursuant to the [trial payment plan]." Plaintiffs' Complaint does not mention the trial payment plan, and therefore, does not state a claim for breach of the trial payment plan. As the Court has repeatedly stated, if Plaintiffs would like to pursue a claim based on the trial payment plan, they must amend their Complaint.

damages. *See Camino Real Mobile Home Park P'ship v. Wolfe*, 119 N.M. 436, 442 (1995); *Armijo v. Wal-Mart Stores, Inc.*, 142 N.M. 557, 568 (N.M. Ct. App. 2007).[11]

A review of the New Mexico Uniform Jury Instructions confirms that contractual obligation, breach, causation, and damages are the elements of a New Mexico breach of contract claim. According to the instructions: "[a] person may breach a contract by . . . failing to perform a contractual obligation when that performance is called for (unless that performance is otherwise excused)." U.J.I. 13-822 (defining breach of contract). Aside from the element of damages, there are no other legal elements in a breach of contract claim. *See generally* U.J.I. Chapter 8 (Contracts and UCC Sales). In other words, compliance is not an element of a breach of contract claim.

Nevertheless, BANA asks the Court to dismiss Plaintiffs' two breach of contract claims because Plaintiffs did not comply with the terms of the Note and Mortgage. While Plaintiffs' alleged failure to comply with the terms of the Note and Mortgage may possibly excuse BANA's breach, s*ee* U.J.I. 13-841 ("A party to a contract cannot recover damages if [his] . . . own act or failure to act prevented the other party from performing the contract."), excuse is an affirmative defense, *see* U.J.I. Chapter 8, Appendix 1. Sample Contracts Instructions (directing the jury that the defendant has the "burden of proving that he was excused from performing" because the plaintiff "itself breached the contract"). To the extent *McCasland* suggests otherwise, its validity is questionable. In *McCasland*, the issue was whether there was a valid contract; the New Mexico Court of Appeals did not discuss compliance or excuse. *See McCasland*, 92 N.M. at 195.

The Court concludes that Plaintiffs are not required to allege that they complied with the terms of the contract. *See id.*at 197 (the plaintiff's failure to allege lack of notice of contract

---

[11] Some courts combine causation and damages as the third and final element. *See Armijo*, 142 N.M. at 568.

termination did not constitute a failure to state a claim, because lack of notice was an affirmative defense, which the defendant had the burden of asserting).

BANA also relies on *McCasland* for the proposition that Plaintiffs' Complaint is deficient because it does not contain "a general averment of the performance of any condition precedent." A condition precedent can be either (1) an event that must occur before a valid contract is formed or (2) an event that must occur, under the terms of the contract, before immediate performance is required. *Western Commerce Bank v. Gillespie*, 108 N.M. 535, 537 (1989). When an issue arises concerning the satisfaction of a condition precedent, the plaintiff carries the burden of proof to show timely satisfaction of the condition. *Id.* at 538. This is part of the plaintiff's burden to establish the existence of a valid contract and show that the defendant breached the contract. While the factual information contained in Plaintiffs' Complaint must plausibly show that there was a contract and that BANA breached this contract, there is no separate requirement that the Complaint contain a stilted and superfluous "general averment" concerning any condition precedent. BANA cites and the Court is aware of no New Mexico case dismissing a complaint because the plaintiff failed to make such a general averment. Under current New Mexico law, the issue is whether Plaintiffs have put forth sufficient factual allegations to show (1) contractual obligation, (2) breach, (3) causation, and (4) damages.

### 2. Count VI: BANA's Alleged Failure to Post Plaintiffs' Payments

After considering Count VI and the Mortgage, the Court concludes that there is sufficient factual information to plausibly support Plaintiffs' claim that BANA breached a contractual obligation.[12] Plaintiffs allege that BANA placed Plaintiffs' payments in a suspense account, rather than applying them to the outstanding balance. While it would have been better for Plaintiffs to identify the terms of the Note and Mortgage that BANA allegedly violated, a cursory

---

[12] The Court notes that BANA does not dispute the existence of a valid mortgage contract.

review of the Mortgage reveals a provision requiring the Lender to apply payments, first to prepayment charges, second to taxes and insurance, third to interest, fourth to principal, and lastly to late charges. Mortgage, Exhibit 1 to Motion to Dismiss ¶ 3. Even though it is not entirely clear that this provision applies to Plaintiffs' reduced payments, at this stage in the lawsuit, Plaintiffs' claim may proceed as long as it is plausible, which it is. The Court can reasonably infer that placing payments in a suspense account would violate the application provision.

Nonetheless, the Court must dismiss Count VI because the Complaint includes no factual information indicating that the alleged breach caused Plaintiffs to suffer damages. Plaintiffs merely assert that BANA is liable for "actual damages and any other damages" caused by the breach without providing any explanation of the nature of the damages suffered. Complaint ¶ 74. Plaintiffs' allegations clearly fall short of the Rule 12(b)(6) standard, which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *See Iqbal*, 556 U.S. at 678; *Wagner Equip. Co. v. Wood*, No. 11-466, 2012 U.S. Dist. LEXIS 39589, at *8-9 (D.N.M. Mar. 20, 2012) (dismissing a plaintiff's breach of contract claim because the plaintiff did not specify how the defendants caused the plaintiff to suffer damages). The Court will dismiss Count VI without prejudice, thereby providing Plaintiffs an opportunity to amend the Complaint, consistent with Rule 11(b), and explain what, if any, damages Plaintiffs' suffered because of the BANA's alleged failure to properly post Plaintiffs' payments.[13]

---

[13] BANA contends that Plaintiffs may not seek emotional distress damages for the alleged breach of contract. Motion to Dismiss at 17. However, the Complaint does not clearly seek such damages and Plaintiffs' Response indicates that Plaintiffs have not affirmatively decided to pursue such damages. As a result, there is not an actual controversy at this time. Because it would be inappropriate for the Court to opine on a legal issue that is not in dispute, the Court does not address this part of BANA's Motion to Dismiss.

### 3. Count VII: BANA's Alleged Failure to Notify Plaintiffs of Interest Rate Changes

Plaintiffs' claim that BANA violated the Note and Mortgage by failing to notify Plaintiffs of interest rate changes is not plausible on its face. Plaintiffs allege that they never received notice of an interest rate change. The Court accepts this as true. However, Plaintiffs admit that they do not "know with any certainty what rates" are being charged. Complaint ¶ 80. In other words, Plaintiffs do not possess reliable knowledge that the interest rate has changed. The sheer possibility that the interest rate changed and BANA failed to notify Plaintiffs does not push Plaintiffs' claim past the point of speculation. "[T]he mere metaphysical possibility that [a] plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that [the] plaintiff has a reasonable likelihood of mustering factual support for [the] claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Because the Court is allowing Plaintiffs to amend the Complaint and cure other defects, the Court will also dismiss Count VII without prejudice. However, the Court reminds Plaintiffs' counsel of Rule 11(b) and the requirement that counsel refrain from filing claims until counsel has completed "an inquiry reasonable under the circumstances." The Court reiterates that Plaintiffs' counsel must comply with Rule 11(b), if Plaintiffs choose to amend the Complaint.

### 4. The Statute of Limitations for Breach of Contract

When a federal court sits in diversity, it must apply the substantive law of the state where it is located, including the state's statutes of limitations and tolling rules. *Elm Ridge Exploration Co., LLC v. Engle*, 721 F.3d 1199, 1210 (10th Cir. 2013). Under New Mexico law, a breach of contract claim that is based on a written contract must be brought within six years. N.M. Stat. Ann. § 37-1-3. As BANA points out, the six-year statute of limitations bars Plaintiffs from

recovering for any alleged breach that occurred before May 31, 2007. If Plaintiffs seek to recover for a breach that occurred before May 31, 2007, and it is not clear that they do, Plaintiffs need to amend the Complaint so as to include factual information supporting their assertion that equitable tolling is appropriate. *See Butler v. Deutsche Morgan Grenfell, Inc.*, 140 P.3d 532, 539 (N.M. Ct. App. 2006) (explaining that the plaintiff carries the burden of proof to support a decision to toll or extend the statute of limitations); *Romero v. United States Life Ins. Co.*, 104 N.M. 241, 243 (N.M. Ct. App. 1986) (dismissing a complaint because there were "no allegations in the complaint as to tolling and estoppel").

IT IS THEREFORE ORDERED THAT:

1. DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(B)(5) AND (6) (Doc. No. 14) is granted in part and denied in part;

2. Plaintiffs' Count II RESPA claim, Plaintiffs' Count III TILA claim, Plaintiffs' Count V misrepresentation claim, and Plaintiffs' Count VI and Count VII breach of contract claims are dismissed without prejudice;

3. Consistent with Rule 11(b), Plaintiffs may amend the Complaint by January 31, 2014 to address the defects identified in this MEMORANDUM OPINION AND ORDER; and

4. If Plaintiffs do not amend the Complaint by January 31, 2014, the Court will dismiss Count II, Count III, Count V, Count VI, and Count VII with prejudice.

_____
SENIOR UNITED STATES DISTRICT JUDGE